IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------
MAGPUL INDUSTRIES CORP.,

                              Plaintiff,

      -vs-

MICHAEL MAYO, et al.,

                             Defendants.
------------------------------------------------------

: CASE NO. 1:13 CV 01782
:
: <u>MEMORANDUM OPINION</u>
: <u>AND TEMPORARY RESTRAINING</u>
: <u>ORDER</u>

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter comes before the Court on plaintiff Magpul Industries Corp.'s ("Magpul") motion for entry of a Temporary Restraining Order and Asset Restraining Order against defendants Michael Mayo, Mayo, Inc. and Does 1-100 (collectively "Defendants"). For the reasons that follow, the motion for entry of a temporary restraining order is granted, and the motion for an asset restraining order is denied.

**I. Background**

The following facts are drawn from the declarations attached to Magpul's motion. Magpul designs, manufactures, and sells firearms products and accessories, and has developed a strong name and reputation within the trade and among members of the consuming public. (Doc. 5-1, ¶2). A number of marks in connection with Magpul's products have been registered on the Principal Register of the United States Patent and Trademark Office ("Magpul Marks"). (Doc. 5-1, ¶3). Magpul owns all rights, title,

and interest in these federal trademark registrations. (Doc. 5-1, ¶3).

Magpul has publicized, but not yet released for sale to the public, a new product called the "MBUS Pro" sight. (Doc. 5-3, ¶2, 5). The term "MBUS" has been registered as a trademark with the U.S. Patent and Trademark Office. (Doc. 5-3, ¶2). Although the "MBUS Pro" is not yet available for sale, Magpul indicates that counterfeit copies have appeared on the online marketplace eBay. (Doc. 5-3, ¶6; Doc. 5-2, ¶1).

On 31 July 2013, a seller with the pseudonym "naples05" was offering for sale an MBUS Pro sight with the description "PRO BUIS-USA SELLER!!! new METAL BACKUP IRON SIGHTS." (DOC. 5-2, ¶1). The listing did not expressly identify the product as a Magpul product, but the Magpul Marks were visible on the image provided with the listing. (Doc. 5-2, ¶1). An investigator for Magpul purchased the product from naples05. (Doc. 5-2, ¶2). The product was shipped by "M.Mayo-Mayo Inc.," P.O. Box 56, Lodi, OH 44254 and delivered by U.S. Mail. (Doc. 5-4, ¶3). Magpul states that the sights included in the package resemble the MBUS Pro sight and bear marks closely resembling, or identical to the Magpul Marks. (Doc. 5-4, ¶3). Magpul contends that the sights are counterfeit, as they were not manufactured by Magpul, nor under its authority. (Doc. 5-4, ¶3). While noting that the counterfeit sights are similar in appearance to the MBUS Pro, Magpul indicates that the counterfeit sights are of inferior construction and materials. (Doc. 5-3, ¶6).

Magpul maintains that defendants Michael Mayo d/b/a "naples05," Mayo, Inc., an Ohio corporation, and John Doe defendants 1-100 sold the counterfeit versions of the MBUS Pro sight which bear the Magpul Mark. Magpul now seeks a temporary restraining order enjoining the defendants from selling or offering for sale the counterfeit

and infringing products. Magpul further requests an order prohibiting the defendants from transferring assets from their accounts with payment processors and financial institutions.

## II. Law and Argument

### A. Plaintiff's Motion for a Temporary Restraining Order

Pursuant to 15 U.S.C. § 1116(a), this Court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office. . . ." Federal Rule of Civil Procedure 65(b) governs the issuance of a temporary restraining order. That rule states, in pertinent part:

> (b) Temporary Restraining Order.
>
> > (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> >
> > (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> >
> > (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65. When deciding whether to issue a temporary restraining order, the district court considers the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

3

McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 459 (6th Cir.1997) (en banc). These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction. See United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth., 163 F.3d 341, 347 (6th Cir.1998).

In light of the above factors and upon due consideration of the Magpul's brief and attached declarations, the Court concludes issuance of the temporary restraining order is warranted.

**1. Success on the Merits**

First, Magpul has shown a likelihood of success on the merits. A claim for trademark infringement under § 1114 requires a showing of the following: (1) ownership of a valid, protectable trademark; (2) that the defendant used the mark in commerce and without the registrant's consent; and (3) there is a likelihood of consumer confusion. Too, Inc. v. TJX Cos., 229 F.Supp.2d 825, 829 (S.D.Ohio 2002).

In this instance, Magpul states that it owns all rights to the Magpul Marks and that the defendants do not have the right or authority to use them. Therefore, the analysis focuses on "whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 280 (6th Cir. 1997).

When determining whether a likelihood of confusion exists, a court must examine and weigh the following eight factors: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual

confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. Id. "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely." Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc., 931 F.2d 1100, 1107 (6th Cir. 1991). Each factor is addressed in turn.

*Strength of the Mark*

"The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due. A mark is strong and distinctive when the public readily accepts it as the hallmark of a particular source; such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both." Daddy's Junky Music, 109 F.3d at 280 (internal quotations and citations omitted).

In determining the strength of a mark, courts place it in one of four categories: generic, descriptive, suggestive, and fanciful or arbitrary. Id. As explained by Daddy's Junky Music,

> [t]hese categories constitute a spectrum of increasing strength and are not perfectly discrete. Fanciful or arbitrary marks are the strongest and most distinctive. An "arbitrary" mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached, such as CAMEL cigarettes or APPLE computers. Assigning a category to a mark constitutes only a single step in determining the strength of the mark.

Id. at 280-81 (internal quotations and citations omitted).

Magpul highlights the strength of its mark on the basis that it "has invested substantial effort and resources to develop and promote public recognition of the

5

Magpul trade name and the family of Magpul-related marks." Magpul states that it "has used the family of Magpul Marks to identify goods and services as genuine Magpul Products, and the Magpul marks and name are well-recognized emblems of Magpul's high quality products." (Doc. 5, p. 7).

In the Court's view, this factor weighs in favor of Magpul, but only slightly. The plaintiff offers little developed argument as to the marks' distinctiveness and fails to directly address the category in which the marks belong. However, given Magpul's averments that it has developed public recognition of the Magpul Marks through advertising with a variety of media, and that its marks have no meaning outside their use by Magpul, this factor weighs in its favor.

*Relatedness of the Goods*

Because there appears to be no question that the alleged counterfeit product is a good related to Magpul's product, the second factor also weighs in favor of Magpul.

*Similarity of the Marks*

As to the third factor, while it is difficult for the Court to discern based on photographs submitted by the plaintiff, Magpul's sworn declarations indicate that the marks that appear on the alleged counterfeit product are identical to, or closely resembling, the Magpul Marks. (Doc. 5-4, ¶4). This factor accordingly weighs in favor of Magpul.

*Evidence of Actual Confusion*

Because there is no evidence of actual confusion in this instance, the fourth factor does not bear on the analysis. See Daddy's Junky Music, 109 F.3d at 284 ("[A] lack of such evidence is rarely significant, and the factor of actual confusion is weighted

heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available.").

### Marketing Channels Used

With respect to the fifth factor, there is a similarity in the marketing channels of the defendants and Magpul, since customers of each party buy their products over the internet. This factor weighs in favor of Magpul.

### Degree of Purchaser Care

Generally, when assessing the degree of purchaser care, the Court considers a typical buyer exercising ordinary caution. "However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases." Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1120 (6th Cir. 1996). In this instance, the plaintiff states that its products are not inexpensive and that its customers "may take more care than the typical buyer." As a consequence, this factor does not weigh in favor of Magpul.

### The Defendant's Intent in Selecting the Mark

When it comes to a defendant's intent, the Court may consider circumstantial evidence of intentional infringement. Wynn Oil Co. v. Am. Way Serv. Corp., 943 F.2d 595, 603 (6th Cir. 1991). Magpul states that the defendants' eBay listings featured photos of the products clearly bearing the Magpul Marks. Magpul also indicates that the listings did not contain language that would have identified the products as being produced by Magpul. Magpul maintains that these facts demonstrate a "knowing and

7

willful attempt to sell counterfeit Magpul branded products while concealing their wrongdoing." The Court agrees that these facts permit the inference that the defendants were intentionally infringing. This factor weighs in favor in Magpul.

*Likelihood of Expansion of Product Lines*

Finally, the Court considers the likelihood of expansion of product lines. "[A] 'strong possibility' that either party will expand [its] business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." Homeowners Grp., 931 F.2d at 1112. This factor weighs in favor of Magpul, because it has presented evidence that it is planning on expanding its business by introducing the, as of yet, unreleased MBUS Pro sight.

Viewing the above factors overall, it is the Court's view that Magpul has sufficiently demonstrated a likelihood of confusion, and, as a consequence, a likelihood of success on the merits. Further, because the standard for unfair competition is the same as that for trademark infringement, the plaintiff has also demonstrated a likelihood of success on its claim of unfair competition by false designation of origin. See Frisch's Rest., Inc. v. Elby's Big Boy, 670 F.2d 642, 647 (6th Cir.1982).

### 2. Irreparable Harm

Plaintiffs seeking a temporary restraining order must demonstrate that irreparable injury is likely in the absence of the order's issuance. Los Angeles v. Lyons, 461 U.S. 95, 103 (1983). In the present case, the plaintiff has demonstrated the requisite likelihood of irreparable harm. First, "[i]n the context of an infringement action, '[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or

8

possible risk to reputation appears.'" Wynn Oil Co., 943 F.2d at 608 (quoting Koppers Co., Inc. v. Krupp-Koppers GmbH, 517 F.Supp. 836, 849 (W.D.Pa.1981)). In this instance, Magpul has demonstrated a likelihood of confusion or possible risk to reputation, and, consequently, a likelihood of irreparable injury. Moreover, Magpul indicates that the defendants' sale of an inferior product bearing Magpul's mark will damage its reputation and goodwill. Magpul also demonstrates that it will suffer additional harm because the defendants are allegedly selling a counterfeit of a product that Magpul has not even released for sale to the public.

### 3. Whether the issuance of the restraining order would cause substantial harm to others

Next comes the question whether issuance of the restraining order would cause substantial harm to others. In the Court's view, the defendants will suffer no legally cognizable harm by being enjoined from selling an infringing product. Further, the harm to Magpul from the denial of the requested order outweighs any harm to defendants' legitimate interests.

### 4. Whether issuance of the order is in the public interest

Finally, the Court considers whether issuance of the order is in the public interest. Magpul maintains that it is, because the order will terminate the sale of counterfeit Magpul products, whose inferior quality present a risk of injury to consumers. Magpul further maintains that issuance of the order will prevent the defendants from deceiving and confusing consumers. In the Court's view, while the plaintiff avers that the counterfeit products are inferior, it has presented no evidence that they are dangerous. However, because it is in the public interest to prevent

9

customer confusion, this factor weighs in favor of issuing the order. See Blockbuster Entm't Grp., Div. of Viacom, Inc. v. Laylco, Inc., 869 F. Supp. 505, 516 (E.D. Mich. 1994).

Because all four factors weigh in favor of granting the plaintiff's requested relief, the motion will be granted.

**B. Plaintiff's motion for an asset restraining order**

Magpul contends that it is entitled to an order freezing the PayPal account associated with the defendants' eBay account. In support, Magpul cites two cases, which it maintains stand for the proposition that "a preliminary injunction barring asset transfer is available where the suit seeks equitable relief." In the Court's view, neither case supports Magpul's position.

The first case, Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), holds something quite different from what the plaintiff seems to believe it does. In that case, the Supreme Court reversed the district court's order enjoining a debtor from disposing of its assets pending adjudication of the creditor's contract claim. The Court, while acknowledging exceptions, reaffirmed the longstanding rule that a judgment fixing the debt was necessary before a court in equity would interfere with the debtor's use of his property. This holding is precisely the opposite of Magpul's interpretation.

The second case, USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94 (6th Cir. 1982), held that a district court may preserve a fund or property by way of injunction, where the property at issue "was likely to be the subject of a constructive trust imposed for the benefit of the plaintiffs." Id. at 98. This holding was based on the

10

principle that "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." Id. (quoting De Beers Consol. Mines v. United States, 325 U.S. 212, 219 (1945). Magpul does not explain how this principle is applicable in this instance, and the Court does not readily perceive how enjoining the defendants from accessing their PayPal account is "of the same character" as the relief that may be granted finally in this case.

Magpul's argument that it is entitled to an order freezing the defendants' PayPal account is accordingly rejected.

### C. Bond

Finally, Magpul requests that the restraining order be issued without bond. Pursuant to Federal Rule 65(c), "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In Roth v. Bank of the Commonwealth, 583 F.2d 527 (6th Cir. 1979), a panel of the Sixth Circuit held that the decision to require bond is committed to the sound discretion of the district court. In this instance, Magpul contends that no bond should be required in light of the evidence of trademark infringement. Although Magpul has presented facts to justify issuance of the restraining order, it fails to present adequate grounds for foregoing Rule 65's bond requirement. The Court, in its discretion, concludes that a $2,000 bond is appropriate in this instance.

### III. Conclusion

For the reasons stated, the motion to restrain the defendants' PayPal accounts is denied. The motion for a temporary restraining order is granted.

Therefore, it is hereby ORDERED that:

1. Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in privity or acting in concert or participation with Defendants having notice of this Order are hereby restrained from:

    a. offering for sale any product represented to be, or represented to be a facsimile of, the MBUS Pro sights, regardless of the claimed origin for that product;

    b. manufacturing, importing, advertising, promoting, marketing, offering to sell, selling, distributing, or transferring any products bearing the Magpul Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Magpul;

    c. making or employing any commercial use of the Magpul Marks as well as any reproductions, counterfeit copies, derivations or colorable imitations thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Magpul Marks;

    d. using any other false designation of origin, false description or representation, or any other use of the Magpul Marks, logo or trade dress, or counterfeit versions thereof, in a manner calculated to falsely advertise Defendants' counterfeit products as being manufactured, distributed, sponsored, authorized, or endorsed by Magpul, or otherwise associated with Magpul in any way;

    e. committing any other acts calculated or likely to cause confusion or mistake among the consuming public or to deceive the public by misleading consumers

and purchasers to the mistaken belief that Defendants' counterfeit products are genuine Magpul products, or were somehow licensed, sponsored, endorsed, authorized, affiliated, or otherwise associated with Magpul;

    f. From secreting, concealing, destroying, selling off, transferring, returning, or otherwise disposing of:

        i. Any products, not manufactured or distributed by Magpul, bearing the Magpul Marks, or any confusingly similar trademarks; or

        ii. Any evidence, including products and records, relating to the manufacture, importation, sale, offer for sale, distribution, transfer, circulation, advertising, marketing, or promotion of any product that infringes the Magpul Marks.

2. Magpul shall deposit a bond in the amount of $2,000 with the Court.

3. The parties are ordered to appear in Room 328, Howard M. Metzenbaum U.S. Courthouse, the United States District Court for the Northern District of Ohio, located at 201 East Superior Avenue, Cleveland, Ohio 44114 on 5 September 2013, at 10:00 A.M. for a preliminary injunction hearing on whether an order should issue pursuant to Fed. R. Civ. P. 65(a), granting the preliminary injunctive relief restraining Defendants, their respective agents, officers, attorneys, representatives, employees, servants, confederates, and all others in privity or acting in concert or participation therewith from engaging in the activities that are the subject of the above Temporary Restraining Order.

4. In order to expedite and simplify the hearing, the parties shall comply with the following procedure in preparation for the hearing:

    a. <u>Legal Memoranda.</u> At least (5) business days before the hearing, the parties

shall submit to the Court memoranda of law regarding the issues to be presented at the hearing on the plaintiff's motion.

b. <u>Stipulations.</u> The parties shall meet and determine what facts are not disputed or will not be contested for purposes of the hearing. The parties shall submit a joint statement of uncontested or undisputed facts to the Court at least five (5) business days before the hearing.

c. <u>Witnesses.</u> Each party shall provide the Court and opposing counsel with a list of their witnesses and a brief summary of their expected testimony at least five (5) business days before the hearing.

d. <u>Exhibits.</u> Before the hearing, each party shall mark for purposes of identification each exhibit they intend to introduce at the hearing.

Presentation of testimony at the hearing shall be limited to matters which remain in dispute.

IT IS SO ORDERED.

                                                                         /s/ Lesley Wells
                                              UNITED STATES DISTRICT JUDGE

Date: 23 August 2013